UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HASSAN ALI PEJOUHESH,

    *Plaintiff*,

    v.

UNITED STATES POSTAL SERVICE,

    *Defendant*.

Civil Action No. 17-1684 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff Hassan Ali Pejouhesh, proceeding *pro se*, brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking records from the U.S. Postal Inspection Service—the U.S. Postal Service's law enforcement division—related to his prosecution and conviction for aiding and abetting bank fraud, possession of stolen mail, and aggravated identity theft. After receiving two requests from Plaintiff, the Postal Service released some records, withheld others, and informed Plaintiff that, pursuant to the U.S. Postal Inspection Service's records retention policy, the Postal Service had destroyed all other responsive records that it once possessed. Plaintiff then brought this suit, challenging the withholdings and the retention policy on a variety of grounds.

The Postal Service has now moved to dismiss Plaintiff's challenge to the records retention policy for lack of standing and has moved for summary judgment with respect to the adequacy of its search and the lawfulness of its withholdings. Dkt. 16. Although advised by the Court of the need to respond to the Postal Service's motion and cautioned about the consequences of failing to do so, over eight months have now passed since Plaintiff's deadline to respond, and he has failed to file a brief in opposition. Reviewing the record as a whole, albeit

without the benefit of Plaintiff's views, the Court concludes (1) that Plaintiff lacks standing to challenge the Postal Inspection Service's records retention policy; (2) that the Postal Service conducted an adequate search for responsive records; and (3) that the Postal Service has justified some, but not all, of its withholdings.

The Court will accordingly **GRANT** in part and **DENY** in part the Postal Service's motion to dismiss and/or for summary judgment.

## I. BACKGROUND

Because Plaintiff has not responded to Defendant's motion for summary judgment, the Court will treat the Postal Service's uncontested evidence as true.[1] *See* Fed. R. Civ. P. 56(e)(2); *see also Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 507 (D.C. Cir. 2010); Local Civ. R. 7(h)(1). Plaintiff was convicted on charges of "aiding and abetting bank fraud, possession of stolen mail, and aggravated identity theft," *United States. v. Pejouhesh*, 603 Fed. App'x 347 (5th Cir. 2015), and he is currently incarcerated the Federal Correctional Institution in Beaumont, Texas. Dkt. 1 at 1 (Compl.).

---

[1] The Postal Service filed its motion on March 20, 2018, Dkt. 16, and the Court issued an order directing that Plaintiff respond on or before May 11, 2018, Dkt. 17. In late April, Plaintiff filed a motion of non-service and motion to strike the Postal Service's motion for failure to effect service. Dkt. 18; Dkt. 19. In response, the Postal Service represented to the Court that the motion had, in fact, been mailed to Plaintiff at the time the motion was filed, and it further represented that, in light of Plaintiff's claim that he did not receive the motion, it re-served him on May 7, 2018. Dkt. 20. The Court, in turn, denied Plaintiff's motion to strike but extended his time to file an opposition to the Postal Service's motion to dismiss and/or for summary judgment until July 6, 2018. Minute Order (May 17, 2018). Three days before the Court entered that order, the Clerk's Office received a letter from Plaintiff indicating that he still had not received the Postal Service's motion. Dkt. 21. That letter, however, is dated May 8, 2018, just the day after the Postal Service mailed Plaintiff a second copy of its motion and before that mailing could reasonably have made its way to Plaintiff at his place of incarceration. The Court has not received any materials from Plaintiff since that letter.

2

In late 2016, Plaintiff submitted a FOIA request to the United States Postal Inspection Service, seeking "arrest warrants, search warrants, . . . warrants and detainers; all data reports, investigative reports, scientific lab reports, and all exploratory records and reports; [and] factual proof of authorized jurisdiction ceded to the Federal Administrative U.S. Attorney's Office from the Governor to the United States as required by law." Dkt. 16-3 at 3 (Mungin Decl. ¶ 6). In response, the Postal Service conducted a search and located 61 pages of responsive material in its digital records. *Id.* (Mungin Decl. ¶ 8). It released 23 pages of documents with redactions, citing FOIA Exemptions (b)(6) and (b)(7)(C), and withheld 17 other pages in their entirety pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E). *Id.* Seven documents originated with other agencies and were referred to those agencies for their review and direct response to Plaintiff, and 14 pages were deemed to be duplicative and were not released. *Id.*

Believing that more documents existed, Plaintiff then submitted a second FOIA request in March 2017, seeking "the search and seizure warrant for safe deposit box number 241 located at Capital One Bank[,] [and the] search warrant for his office, home, and his three cars." *Id*. at 4–5 (Mungin Decl. ¶ 9). Because Plaintiff had already been "provided with all remaining responsive material in existence which related to the subject of his request," the Postal Inspection Service did not conduct an additional search. *Id.* Plaintiff then filed an administrative appeal on May 1, 2017, and the Postal Service affirmed the initial decision in part and remanded in part. Dkt. 1-1 at 1. With respect to Plaintiff's contention that the Postal Inspection Service should have located additional responsive records, the Postal Service explained, as the Postal Inspection Service had previously advised Plaintiff, that "all hard copy documents and evidence were destroyed when [Plaintiff] exhausted [the] appeals" of his conviction. *Id.* As a result, "the 23 pages that [he] received were the only remaining documents that relate[d] to [his] request." *Id.*

The destruction of those records, moreover, was proper according to the Postal Service because "[t]he U.S. Postal Inspection Service has a retention policy wherein hardcopy records can be disposed of once the associated case is closed." *Id.* at 2.

With respect to Plaintiff's remaining contentions, the Postal Service concluded that the Postal Inspection Service properly relied on FOIA Exemptions 6 and 7 to withhold or to redact portions of the materials Plaintiff sought. *Id.* The Postal Service did, however, identify one error that the Postal Inspection Service had made: It declined to release 14 pages of responsive records on the ground that those pages were "duplicative of records that" had already been released to Plaintiff; on further review, however, the Postal Service concluded that the records were not in fact duplicative. *Id.* at 2–3. As the Postal Service explained, although the records at issue were "mostly comprised of information that is identical to the information contained in [the] records that [had been] released to" Plaintiff, they were "only substantially similar records and not duplicate records." *Id.* The Postal Service, accordingly, remanded Plaintiff's "request for further processing with regard to [those] 14 pages." *Id.* at 3.

Plaintiff then initiated this suit, "appealing [that] final decision" and challenging the Postal Inspection Service's retention policy as violative of FOIA and his rights to "due process." *Id.* at 1, 5 (Compl.).[2] In addition to seeking injunctive and declaratory relief, he seeks damages on his FOIA and due process claims. *Id.* at 8 (Compl.) The Postal Service has moved to dismiss Plaintiff's challenge to the retention policy for lack of standing, and it has moved for summary judgment on Plaintiff's remaining claims. *See* Dkt. 16. As noted above, notwithstanding the

---

[2] Plaintiff's complaint appears to be missing a page; according to Plaintiff's handwritten pagination, the complaint goes from page 4 to page 6.

Court's caution and the passage of over a year from the time the Postal Service filed its motion, Plaintiff has not responded to the motion.

## II. ANALYSIS

The Postal Service's motion breaks down into two parts: It first argues that Plaintiff lacks standing to challenge the Postal Inspection Service's records retention policy, and it then argues that Plaintiff's remaining claims fail based on the uncontested facts.

### A. Policy and Practice Claim

Plaintiff's principal challenge is directed at the Postal Inspection Service's records retention policy, which allows for the destruction of records relating to an investigation "once the associated case is closed." Dkt. 1-1 at 2. According to Plaintiff, this policy "precludes disclosure under" FOIA, and it violates the due process rights of the subjects of those investigations, who receive no notice prior to the destruction of the records and who may need the records for, among other things, seeking "post-conviction relief." Dkt. 1 at 4–5, 8 (Compl.). The Postal Service does not take issue with Plaintiff's claim on the merits but, rather, argues that Plaintiff lacks standing to pursue the claim. The Court agrees.

A party seeking to invoke the Court's jurisdiction bears the burden of demonstrating that he has standing to sue and must carry that burden in "the manner and [with] the degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted). Thus, at the motion to dismiss stage, a plaintiff must allege "general" facts that, if accepted as true, would establish "injury resulting from the defendant's conduct," while at the motion for summary judgment stage, a plaintiff must offer evidence of "specific facts" to support his claim to standing. *Id.* Because the Postal Service has moved to dismiss for lack of standing, and it has not offered its own evidence, the Court will consider

whether Plaintiff has alleged facts or otherwise carried his burden of establishing a "plausible" claim to standing. *See Pub. Citizen, Inc. v. Trump*, No. CV 17-253, 2019 WL 498528, at *6 (D.D.C. Feb. 8, 2019).

As is often repeated, the "irreducible constitutional minimum" for Article III standing is that the plaintiff has suffered or will imminently suffer "(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560–61). Where, as here, standing turns on a claim of future injury, the "threatened injury must be certainly impending;" "[a]llegations of possible future injury" will not suffice. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal quotation marks and citation omitted); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Where a plaintiff seeks injunctive relief based on allegations of past wrongdoing, moreover, the plaintiff must show that he likely to face the same injustice in the future; it is not enough to have suffered a past injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 110–11 (1983).

Even liberally construed, Plaintiff's complaint does not satisfy this standard, and Plaintiff has failed to otherwise explain how he has standing to seek injunctive or declaratory relief. With respect to any records Plaintiff sought that were not preserved, those records are gone, and neither an injunction nor a declaratory judgment can remedy that loss. Nor has Plaintiff offered any reason to believe that he will seek records from the Postal Inspection Service at some time in the future, that those records have not yet been destroyed, and that the Postal Inspection Service is likely to destroy those records in the absence of injunction. In short, Plaintiff has not alleged—or even suggested—that he is likely to suffer any future injury or that an injunction or

6

declaratory judgment would accord him any relief. Under those circumstances, the Court lacks jurisdiction to consider what is, at best, a speculative claim.

Plaintiff also seeks damages, and, because damages are backward-looking, the Court must consider whether he has alleged a plausible damages claim. He has not. Plaintiff cites to 5 U.S.C. § 552(a)(4)(E) in his claim for damages. Dkt. 1 at 8 (Compl.). But that provision merely authorizes courts to award attorneys fees and costs to a prevailing party. It does not create a damages remedy, and it does not accord any relief to those, like Plaintiff, who have not prevailed in a FOIA case. Plaintiff also refers to "due process relief" in that same paragraph of his complaint. *Id.* But that claim fails at the threshold as well. The sovereign immunity of the United States extends to the Postal Service, and thus, absent a waiver, the Postal Service is not subject to suit for damages. *See Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 484 (2006). Plaintiff has failed to identify any waiver that might apply here, nor is the Court aware of one. The Federal Tort Claims Act, 28 U.S.C. § 1346(b), for example, does not provide a basis to recover from the United States for alleged constitutional deprivations, *see, e.g.*, *FDIC v. Meyer*, 510 U.S. 471, 477–78 (1994).

The Court will, accordingly, grant the Postal Service's motion to dismiss Plaintiff's policy or practice claim.

**B.      Search and Withholdings**

The Postal Service has also moved for summary judgment with respect to the adequacy of its search and the lawfulness of its withholdings. As explained below, the Court concludes that the Postal Service conducted an adequate search but that, on the present record, the Postal Service has failed to justify some of its withholdings.

1. *Adequacy of the Search*

"An agency has an obligation under FOIA to conduct an adequate search for responsive records." *Ewell v. U.S. Dep't of Justice*, 153 F. Supp. 3d 294, 301 (D.D.C. 2016). The adequacy of an agency's search "is judged by a standard of reasonableness." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). In other words, the agency must conduct a search that is "reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). To prevail on summary judgment, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). It need not demonstrate, however, that it located every document that the FOIA requester expected the agency to find; that is, "the adequacy of a search is 'determined not by the fruits of the search, but by the appropriateness of [its] methods.'" *Hodge v. FBI*, 703 F.3d 575, 579 (D.C. Cir. 2013) (alteration in original) (quoting *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)).

As documented in the declaration of Kimberly Mungin, "an Information Disclosure Technician for the Office of Counsel . . . at the United States Postal Inspection Service," Dkt. 16-3 at 2 (Mungin Decl. ¶ 1), the Postal Service conducted a search for responsive records that was "reasonably calculated to uncover all relevant documents," *Valencia-Lucena*, 180 F.3d at 325. Mungin "searched the agency electronic files which contain investigations stored and catalogued in the Inspection Service computer database known as the Inspection Service Integrated Information System." Dkt. 16-3 at 4 (Mungin Decl. ¶ 7). A request was also "sent to the Postal Inspector assigned to the case for any responsive material related to [Plaintiff's] FOIA request."

8

*Id.* That Postal Inspector indicated that all hardcopies of potentially responsive records were destroyed when Plaintiff exhausted his appellate rights and that, as a result, "[t]he only documents that remain[ed] [were] the ones attached to the case file in" the electronic database. *Id.* Finally, and most importantly, Mungin is familiar with "the records and record systems employed by" the Postal Investigative Service, and she attests that the locations that were searched "were the most likely, and only, place[s] where responsive records could be located." *Id.* at 2, 4 (Mungin Decl. ¶¶ 2, 7).

This search was sufficient, and, given the overlap between Plaintiff's two FOIA requests, nothing further was required to respond to Plaintiff's second request.[3] The Court, accordingly, concludes that the Postal Service conducted adequate searches for the records Plaintiff sought.

2. *Withholdings*

The Postal Inspection Service located 61 pages of records responsive to Plaintiff's FOIA requests. It referred seven of those pages to other agencies, ultimately released 37 pages with redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C), and withheld 17 pages in their entirety pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E). The Court's review of the propriety of these withholdings is hampered by the fact that the Postal Service did not submit a *Vaughn* index in support of its motion, and the declaration that it did submit is cursory. As the D.C. Circuit has explained, nothing in the case law dictates what form an agency's description of the bases for its withholdings must take, but, regardless of the form, the evidentiary material

---

[3] The Postal Service's brief represents that a further search was conducted in response to Plaintiff's second, overlapping request. Dkt. 16-2 at 15. That is not correct. As the brief elsewhere asserts, *id*. at 5, and the Mungin declaration attests, Dkt. 16-3 at 5 (Mungin Decl. ¶ 9), a second search was not conducted because the first search located all potentially responsive records that the Postal Inspection Service still had. This discrepancy in the Postal Service's brief, however, is immaterial.

9

must provide "the reviewing court a reasonable basis to evaluate [its] claim of privilege." *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994) (quoting *Delaney, Migdall & Young, Chartered v. IRS*, 826 F.2d 124, 128 (D.C. Cir. 1987)). As explained below, the Court concludes that the Postal Service has adequately supported its invocation of FOIA Exemption 6. It has not, however, provided the Court sufficient information to permit it to evaluate the Postal Service's reliance on FOIA Exemptions 7(C) and 7(E).

The Postal Service redacted portions of the responsive records pursuant to FOIA Exemption 6. That exemption shields "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "[T]he mere fact that an agency file or record contains personal, identifying information," however, "is not enough to invoke Exemption 6;" in addition, the information must be "of such a nature that its disclosure would constitute a clearly unwarranted privacy invasion." *Judicial Watch, Inc. v. U.S. Dep't of State*, 282 F. Supp. 3d 36, 49–50 (D.D.C. 2017) (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)). The Court, accordingly, must first determine whether "disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). If the agency clears that first hurdle, the Court must then "balance the privacy interest in non-disclosure against the public interest" in disclosure. *Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1050 (D.C. Cir. 2009).

The Postal Inspection Service correctly applied this framework. As explained in the Mungin declaration, she considered four questions in assessing whether Exemption 6 authorized the Postal Inspection Service to redact "victims['] account numbers, addresses, telephone

10

numbers and motor vehicle tag numbers." Dkt. 16-3 at 6 (Mungin Decl. ¶ 13). She first concluded that the information was "similar to what . . . is found in personnel or medical files." *Id*. She then concluded that the victims possessed "a significant"—and not *de minimis*—interest "in that information." *Id.* Third, she "evaluated the requester's asserted FOIA public interest in disclosing this information." *Id.* And, finally, she conducted the required balancing and determined that disclosure of "[t]his highly personal information would constitute a clearly unwarranted invasion of the personal privacy of third parties." *Id.*

Mungin's conclusion is well-supported by the case law. Account and vehicle tag numbers, addresses, and telephone numbers are precisely the sort of "bits of personal information . . . the release of which would 'create[ ] a palpable threat to privacy.'" *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152–53 (D.C. Cir. 2006) (quoting *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391 (D.C. Cir. 1987)). And while "the court must 'balance' the individual's right of privacy against the public interest in disclosure," *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015), that balancing is not difficult where, as here, Plaintiff has not provided any explanation regarding the public interest in disclosure, and no such interest is apparent. *See Fitzgibbon v. CIA*, 911 F.2d 755, 768 (D.C. Cir. 1990) ("[S]omething . . . outweighs nothing every time." (internal citation omitted)). The Court, accordingly, concludes that the Postal Inspection Service properly relied on Exemption 6 to redact victims' "account numbers, addresses, telephone numbers and motor vehicle tag numbers." Dkt. 16-3 at 6 (Mungin Decl. ¶ 13).

On the present record, however, the Court cannot say the same about the Postal Service's invocation of Exemptions 7(C) or 7(E), at least in certain respects.

Exemption 7(C) protects similar interests to Exemption 6 but applies to a narrower category of records. *See Tracy v. U.S. Dep't of Justice*, 191 F. Supp. 3d 83, 95 (D.D.C. 2016). While Exemption 6 applies broadly to all "[g]overnment records on an individual which can be identified as applying to that individual," *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (quotations and citation omitted), Exemption 7(C) applies only to "records . . . compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7)(C). Exemptions 6 and 7(C), moreover, differ in other respects. Notably, while Exemption 6 is available only if the disclosure "would constitute a *clearly* unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6) (emphasis added), "[t]he adverb 'clearly' . . . is not used in Exemption 7(C)," *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165–66 (2004). Similarly, while "Exemption 6 refers to disclosures that '*would* constitute' an invasion of privacy, Exemption 7(C) encompasses any disclosure that '*could* reasonably be expected to constitute' such an invasion." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989) (emphasis added).

The Postal Inspection Service relied on Exemption 7(C) to withhold "law enforcement employees['] names, victims['] names, victims['] email addresses and third party statements." Dkt. 16-3 at 6 (Mungin Decl. ¶ 14). With respect to much of this information, Mungin engaged in a similar process to the process she used in applying Exemption 6. She concluded, for example, that revealing the identity of the victims and law enforcement employees "could result in unwanted contacts, threats, and harassment" and that "[t]he substantial privacy interests of the third parties" outweighed the public interest in disclosure. *Id.* at 6–7 (Mungin Decl. ¶¶ 14–15). Overall, moreover, she concluded that "the private interests of the postal inspectors, victims['] names, victim email addresses, and third party statements far outweighed the [P]laintiff's

interests and the public would not benefit from knowing the names." *Id.* at 7 (Mungin Decl. ¶ 16).

The Court agrees that much of this information falls well within the scope of Exemption 7(C). The D.C. Circuit has recognized, for example, that law enforcement officials "have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives," *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980), and it has "adopted a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity,'" *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991)). Under this precedent, it is clear that "names" and "email addresses" of victims and law enforcement employees fall squarely within Exemption 7(C). Dkt. 16-3 at 6 (Mungin Decl. ¶ 14).

At least on the present record, however, the Court cannot assess how Exemption 7(C) applies to the "third party statements" that the Postal Inspection Service elected to withhold. To be sure, to the extent those statements disclose the names or other identifying information about witnesses, that information likely falls within the scope of the exemption, and it is also possible that everything contained in those statements could be used to identify a witness. It is also possible, however, that substantial portions of those statements do not raise any plausible privacy concern. The problem is that nothing in the Mungin declaration or otherwise in the record permits the Court to determine whether the Postal Inspection Service had sufficient basis to withhold substantial portions of the third-party statements. The Court, accordingly, cannot grant

13

summary judgment in favor of the Postal Service with respect to those records without further information.

Nor can the Court assess whether the Postal Inspection Service properly invoked Exemption 7(E). That exemption permits an agency to withhold "records or information compiled for law enforcement purposes" if the release of those records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." *See* 5 U.S.C. § 552(b)(7)(E).

The Court can quote the Postal Service's evidentiary submission on this issue in full:

> Exemption (b)(7)(E) was applied to the U.S. Postal Inspection Service Search Warrant/Arrest Operation Plan documents. Each document was evaluated to determine if any information could be segregated and released. The documents withheld in their entirety contained law enforcement sensitive information that could not be released without destroying the integrity of the document, law enforcement techniques, or without identifying third party individuals. In these instances, the [Postal Inspection Service] was forced to withhold the entire document.

Dkt. 16-3 at 7 (Mungin Decl. ¶ 17). This showing is insufficient to support the Postal Service's motion for summary judgment.

As an initial matter, the Postal Service fails to explain how the identity of "third party individuals" implicates Exemption 7(E), which addresses law enforcement techniques, procedures, and guidelines. Likewise, although the Mungin declaration refers to "law enforcement techniques," it does so in the disjunctive and otherwise fails to show that the each of the records at issue would, if disclosed, reveal a law enforcement technique, procedure, or guideline. But, even putting those problems aside, the declaration fails to offer any basis to conclude that "disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

The Postal Service attempts to elide this final difficulty by quoting the D.C. Circuit's decision in *Public Employees for Environmental Responsibility v. International Boundary and Water Commission ("PEER")*, 740 F.3d 195, 204 & n.4 (D.C. Cir. 2014), for the proposition that "[c]ourts are divided as to whether the phrase 'if such disclosure could reasonably be expected to risk circumvention of the law' applies only to 'guidelines' or also applies to 'techniques and procedures.'" Dkt. 16-2 at 19. Then, citing a decision for the Second Circuit, the Postal Service posits that "the better-reasoned decisions recognize that providing categorical protection to 'techniques and procedures' (*i.e.,* not requiring a showing that 'disclosure could reasonably be expected to risk circumvention of the law') is consistent with both the plain meaning of the statute and the history of the amendments to Exemption (7)(E) in 1986." *Id*. What the Postal Service fails to note, however, is that in the *PEER* case, the D.C. Circuit—after noting the split in authority—went on to say: "This Court has applied the 'risk circumvention of the law" requirement both to records containing guidelines and to *records containing techniques and procedures*." 740 F.3d at 204 n.4 (emphasis added). That is the law of this Circuit, and this Court is bound to apply it.

Although Exemption 7(E) does not impose "a highly specific burden" on law enforcement agencies to show how "the law will be circumvented," it does require agencies to "'demonstrate[] logically how the release of [the requested] information might create a risk of circumvention of the law.'" *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (citation omitted). That burden is not a demanding one, *see PEER*, 740 F.3d at 205 n.4, but agencies are not free simply to read the requirement out of the statute. Because the Postal Service entirely ignores the requirement, the Court cannot grant summary judgment in its favor with respect to the Postal Inspection Service's invocation of Exemption 7(E).

15

Finally, the Postal Service has failed to carry its burden of showing that it released all reasonably segregable material. *See Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996). FOIA requires that agencies disclose "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Under D.C. Circuit precedent, the Court "must make specific findings of segregability regarding the documents to be withheld" before "approving the application of a FOIA exemption." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). Although the precise standard the Court is required to apply "is not clear," *id*. at 1117, the Court cannot discharge this obligation without any evidence regarding the nature of the records at issue or the agency's efforts to segregate non-exempt material. Yet, here, Mungin merely attests that she "made every effort to segregate material that may be disclosed entirely or with minimal redactions" and that "[i]t is not possible to reveal any additional information without revealing the substance of the information exempted." Dkt. 16-3 at 8 (Mungin Decl. ¶ 19). Whatever standard applies, that is too little information to allow the Court to conduct even a cursory review.

The Court, accordingly, concludes that the Postal Service properly redacted victims' "account numbers, addresses, telephone numbers and motor vehicle tag numbers" pursuant to Exemption 6 and that it properly redacted "law enforcement employees['] names, [and] victims['] names, [and] email addresses" pursuant to Exemption 7(C). But, in all other respects, the Court lacks sufficient information assess the Postal Inspection Service's withholding and must, accordingly, deny the Postal Service's motion for summary judgment.

## CONCLUSION

For the reasons explained above, the Postal Service's motion to dismiss and/or for summary judgment, Dkt. 16, is hereby **GRANTED** in part and **DENIED** in part. The Postal Service may renew its motion with additional support.

**SO ORDERED**.

/s/ Randolph D. Moss  
RANDOLPH D. MOSS  
United States District Judge

Date: March 26, 2019