UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HASSAN ALI PEJOUHESH,

    *Plaintiff*,

v.

UNITED STATES POSTAL SERVICE,

    *Defendant*.

Civil Action No. 17-1684 (RDM)

## MEMORANDUM OPINION AND ORDER

This is the third summary judgment decision in what should have been a straightforward FOIA case. In 2016 and 2017, Plaintiff Hassan Ali Pejouhesh submitted two FOIA requests to the U.S. Postal Inspection Service—the U.S. Postal Service's law enforcement division—seeking records related to his prosecution and conviction for aiding and abetting bank fraud, possession of stolen mail, and aggravated identity theft. The Postal Service located 61 pages of records responsive to Plaintiff's FOIA requests. It referred seven of those pages to other agencies, released 37 pages with redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C), and withheld 17 pages (constituting the "Postal Inspection Service Search Warrant/Arrest Operation Plan" ("Operation Plan")) in their entirety pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E). Dkt. 16-3 at 3–5 (Mungin Decl. ¶¶ 6–10). Plaintiff, proceeding *pro se*, filed this FOIA action, challenging the Postal Service's withholdings.[1]

---

[1] Plaintiff also challenged the Postal Service's document retention policy. That issue is no longer before the Court. *See* Dkt. 22 at 5–7 (holding that Plaintiff lacked standing to challenge the policy).

To date, the Court has granted summary judgment to the Postal Service on every issue presented in this case, with three exceptions. *See* Dkt. 22; Minute Order (Nov. 2, 2020). First, the Postal Service failed adequately to explain its decision to redact "third-party statements" from certain responsive records. Dkt. 22 at 12–14. Second, the Postal Service failed adequately to explain its invocation of FOIA Exemption 7(E) to withhold the Operation Plan documents in their entirety. *Id.* at 14–15. Finally, the Postal Service "failed to carry its burden of showing that it released all reasonably segregable material." *Id.* at 16.

The Postal Service now moves for summary judgment with respect to the three remaining issues. Dkt. 78. Plaintiff also moves for summary judgment, arguing that the Postal Service has unlawfully withheld additional documents related to his prosecution—documents that were not among the 61 pages of records that the Postal Service described in its *Vaughn* index.[2] Dkt. 63. For the following reasons, the Court will **GRANT** the Postal Service's motion in part and **DENY** it in part; **DENY** Plaintiff's cross-motion; and **ORDER** the Postal Service to file a status report on or before March 28, 2022, explaining whether the Affidavit in Support of an Arrest Warrant, withheld in part pursuant to Exemptions 6 and 7(C), should be released under the public domain doctrine.

**A.    The Postal Service's Motion for Summary Judgment**

The Postal Service's motion for summary judgment addresses the three issues that the Court left open in its two prior decisions. *See* Dkt. 22; Minute Order (Nov. 2, 2020). As the Court explained in both decisions, more information was needed to determine whether the Postal Service (1) properly invoked FOIA Exemption 7(C) to redact "third-party statements;" (2)

---

[2] Plaintiff's motion is styled as a motion to compel or enforce. *See* Dkt. 63. The Court construed the motion as a motion for summary judgment and ordered the Postal Service to file an opposition. *See* Minute Order (Feb. 26, 2021). The Postal Service failed to do so.

properly invoked FOIA Exemption 7(E) to withhold the Operation Plan in its entirety; and (3) "carr[ied] its burn of showing that it released all reasonably segregable material." Minute Order (Nov. 2, 2020). The Court addresses each issue in turn.

1. *Exemption 7(C)*

With respect to the Postal Service's decision to withhold "third-party statements" pursuant to Exemption 7(C), the Postal Service maintains that this issue is not properly before the Court. As the Postal Service notes, the Court wrote in its most recent decision that the remaining issues all relate "to 17 pages that Defendant withheld in their entirety"—that is, the Operation Plan. The Postal Service now clarifies that the Operation Plan contains no third-party statements, Dkt. 78-2 at 2–3, and thus, according to the Postal Service, any question regarding whether it properly withheld the third-party statements is no longer at issue.

That argument is a strawman. As the Postal Service acknowledges in the very next sentence of its brief, it *did* redact third-party statements from a different set of records—the records that it partially released, which contained "victim[] . . . statements" describing "the victim's [sic] . . . account numbers, email address, addresses, or the type of accounts that was compromised." *Id.* Indeed, the Postal Service's *Vaughn* index confirms that the agency withheld third-party statements from a document described as an "Affidavit in Support of an Arrest Warrant." Dkt. 31-3 at 7. The problem the Postal Service previously faced—and that it continues to face—is that its justification for those withholdings was—and is—too sparse to permit meaningful judicial review. Accordingly, even if the Court need not decide whether the third-party statements were properly redacted from the Operation Plan, it must now determine whether they were properly redacted from the Affidavit in Support of an Arrest Warrant.

3

Recognizing that the propriety of its decision to withhold the third-party statements remains unresolved, the Postal Service now offers a single sentence to support those redactions: "The individuals whose names and statement were withheld have a substantial privacy interest especially in the absence of any stated public interest." Dkt. 78-3 at 3 (Warner Decl. ¶ 9 n.1). That justification is, once again, unduly thin. But the Postal Service's argument ignores an even more significant problem: it appears that the government filed the Affidavit in Support of an Arrest Warrant—without redactions—on the public docket in Plaintiff's criminal case. *See* Complaint at 2–9, *United States v. Pejouhesh*, No. 4:10-cr-687 (S.D. Tex. filed Sept. 24, 2010), ECF No. 1. Under the "public domain doctrine," records "normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999). "[T]he logic of FOIA compels the result: if identical information is truly public, then enforcement of an exemption cannot fulfill its purposes." *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy,* 169 F.3d 16, 19 (D.C. Cir. 1999). The fact that "*similar* information" is already public "does not suffice" for purposes of the public domain doctrine, however; the "*specific* information sought . . . must already be in the public domain by official disclosure." *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (first emphasis added).

According to the Postal Service's *Vaughn* index, the only document from which it redacted third-party statements and related material (including application numbers, account numbers, addresses, and email addresses) is the Affidavit in Support of an Arrest Warrant.[3] Dkt.

---

[3] The *Vaughn* index suggests that the victim statements were withheld pursuant to Exemption 6, and not Exemption 7(C). The index does not mention victim statements elsewhere, however, so the Court concludes that the "victim statements" that remain at issue in this case are those mentioned in the *Vaughn* index.

31-3 at 7.  The first entry in the criminal docket for Plaintiff's prosecution in the Southern District of Texas is a criminal complaint with an attachment that matches the description in the *Vaughn* index: an eight-page document entitled "Affidavit in Support of an Arrest Warrant."  *See* Complaint at 2–9, *United States v. Pejouhesh*, No. 4:10-cr-687 (S.D. Tex. filed Sept. 24, 2010), ECF No. 1.  That affidavit contains account numbers, email addresses, and home addresses, none of which are redacted.  *See id.*  If the affidavit on the public docket is the same as the affidavit listed in the *Vaughn* index, then the "exact" document that the Postal Service has withheld in part from Plaintiff is already "a permanent public record," and the Postal Service's invocation of Exemption 7(C) is precluded by the public domain doctrine.  *Cottone*, 193 F.3d at 554.

To ensure that the document filed in Plaintiff's criminal case is, in fact, the same document that the Postal Service withheld in part from Plaintiff under Exemption 7(C), the Court will order that the Postal Service file a status report within 14 days explaining (1) whether the "victim statements" it withheld under Exemption 7(C) were publicly released on Plaintiff's criminal docket, and (2) whether the document containing those statements should be released under the public domain doctrine.

    2.    *Exemption 7(E)*

With respect to the Operation Plan and Exemption 7(E), the Court previously held that the Postal Service had failed "to explain how the identity of 'third party individuals' implicates Exemption 7(E), which addresses law enforcement techniques, procedures, and guidelines." Dkt. 22 at 14; *see also* Minute Order (Nov. 2, 2020).  Moreover, "even putting those problems aside," the Court further held that the Postal Service had "fail[ed] to offer any basis to conclude that 'disclosure could reasonably be expected to risk circumvention of the law.'"  Dkt. 22 at 14 (quoting 5 U.S.C. § 552(b)(7)(E)); *see also* Minute Order (Nov. 2, 2020) (same).

In a declaration submitted along with the Postal Service's renewed motion for summary judgment, the Postal Service now attests that "Exemption 7(E) was . . . not used to redact the names of the third-party located in the Operation Plan." Dkt. 78-3 at 4 (Warner Decl. ¶ 13). The declaration does not, however, explain—or even address—the Postal Service's earlier assertion that the Operation Plan "contained law enforcement sensitive information that could not be released without destroying the integrity of the document, law enforcement techniques, or *without identifying third party individuals*." Dkt. 16-3 at 7 (Mungin Decl. ¶ 17) (emphasis added). Because this case has been pending for over four years, and given the Postal Service's repeated failures to provide detailed declarations or a detailed *Vaughn* index, the Court ordered the Postal Service to produce the 17-page Operation Plan for *ex parte*, in camera review. Minute Order (Jan. 11, 2022). The Postal Service submitted the documents on January 14, 2022. Dkt. 100.

Having reviewed the Operation Plan, the Court now concludes that it was properly withheld under Exemption 7(E).[4] That exemption "requires a two-step inquiry:" first, "the Court must determine whether the records were compiled for law enforcement purposes." *Jud. Watch, Inc. v. U.S. Dep't of State*, 282 F. Supp. 3d 36, 46 (D.D.C. 2017). Second, the Court "must determine whether release of those records 'would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.'" *Id.* (quoting 5 U.S.C. § 552(b)(7)(E)). For this second step,

---

[4] The Court previously held that the Postal Service properly invoked Exemption 7(C) to withhold the names and contact information of law enforcement employees from all of the responsive records at issue in this case, including the Operation Plan. *See* Dkt. 22 at 13. The Court now considers whether other, non-identifying information in the Operation Plan was properly withheld.

"Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, [E]xemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).

The Operation Plan satisfies Exemption 7(E)'s requirements. To start, the document was compiled for a "law enforcement purpose." As the Postal Service correctly asserts in its most recent declaration, the Plan contains:

> (1) law enforcement agents['] locations; (2) law enforcement telephone numbers; (3) law enforcement undercover vehicles utilized in the operation; (4) how law enforcement planned on executing the arrest and search warrant; ([5]) who the suspects and targets were; ([6]) potential hazardous warnings identified by law enforcement related to the operation; ([7]) federal law enforcement coordination efforts with local law enforcement; ([8]) assignments for the law enforcement involved in the operation; ([9]) signals utilized by law enforcement; and ([10]) evidence handling techniques utilized by law enforcement.

Dkt. 78-3 at 4–5 (Warner Decl. ¶ 15). Having reviewed the Plan, the Court finds that it served the law enforcement purpose of memorializing a common plan for Postal Inspection Service officers to follow when arresting Plaintiff and executing a search warrant. The first prong of Exemption 7(E) standard is thus satisfied.

The Operation Plan also satisfies Exemption 7(E)'s "low bar" for the agency to justify withholding documents the release of which would "disclose techniques and procedures for law enforcement investigations." 5 U.S.C. § 552(b)(7)(E). The Postal Service argues that "[r]eleasing the Operation Plan would enable individuals to learn how the Inspection Service approached arrests operations." *Id.* at 5 (Warner Decl. ¶ 16). It contains, for example, "sensitive information about how law enforcement plan[ned] on approaching the target residence during the operation and how the agent [planned to] proceed once inside the target residence." *Id.* The

7

Operation Plan also "contains sensitive information about how many law enforcement officers [would] be utilized to conduct entry into the target residence and how many law enforcement officers will provide security outside of the target residence." *Id.* Thus, the Postal Service contends, disclosure of the Plan would allow potential criminals to "plan criminal activities to evade detection." *Id.* (Warner Decl. ¶ 17). The Court agrees with the Postal Service's description and assessment of the Operation Plan. Although in a general sense, the kinds of techniques described in the Plan may not be novel or secret, the details contained in the Plan, if disclosed, could assist criminals in evading detection or arrest.

The Court, accordingly, concludes that the Postal Service properly withheld the Operation Plan documents pursuant to Exemption 7(E).

3.   *Segregability*

FOIA requires that the Postal Service engage in reasonable efforts to "segregate and release nonexempt information," 5 U.S.C. § 552(a)(8)(A)(ii)(II), and "[i]t is the government that bears the burden of justifying the non-disclosure of records, including on the ground that non-exempt records are not reasonably segregable," *Shapiro v. U.S. Dep't of Just.*, 153 F. Supp. 3d 253, 287 (D.D.C. 2016). To carry this burden, the Postal Service must demonstrate "with 'reasonable specificity' why the documents cannot be further segregated." *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996).

The Court concludes that segregability is not possible for the Operation Plan. As discussed, the Postal Service has provided the document to the Court, *see* Dkt. 100, and the Court has determined that the Plan almost exclusively consists of enforcement personal identifying information, plans, and techniques, which are properly withheld under FOIA Exemption 7(E). The Court, moreover, credits the Postal Service's view that releasing the

8

Operation Plan—even in redacted form—could "enable individuals to learn how the [Postal] Inspection Service approache[s] arrest operations." Dkt. 78-3 at 5 (Warner Decl. ¶ 12). The Court thus concludes that the Operation Plan is not reasonably segregable.

With respect to the Affidavit in Support of an Arrest Warrant, the Court cannot conclude whether the withheld victim statements are segregable until the Postal Service explains whether the withheld document is, in fact, a public record. The Court thus concludes that it is premature to assess that document's segregability.

Finally, with respect to all other documents described in the Postal Service's *Vaughn* index, the Court concludes that the Postal Service produced all segregable, non-exempt information. According to the *Vaughn* index, for every document other than the Operation Plan and the affidavit containing victim statements, the Postal Service withheld only "[the] Postal Inspector's name" or "[the] Postal Inspector's name and initials." Dkt. 31-3 at 7. An individual's name, when properly redacted pursuant to Exemption 7(C), *see* Dkt. 22 at 16, cannot be reasonably segregated. The Court, accordingly, finds that segregability is not possible for the remaining documents described in the Postal Service's *Vaughn* index.

In short, putting the Affidavit in Support of an Arrest Warrant to the side for the moment, the Court concludes that the Postal Service reasonably segregated all documents described in its *Vaughn* index. Because the Court cannot determine at this point whether the affidavit must be disclosed in its entirety under the public domain doctrine, it is premature to determine whether the Postal Service released all segregable, non-exempt information from that document.

**B.      Plaintiff's Cross-Motion for Summary Judgment**

For his part, Plaintiff seeks the release of documents that he alleges have been improperly withheld by the Postal Service. Dkt. 63 at 1. Specifically, he requests "certified cop[ies]" of the

9

following: (1) the "search warrant of safe deposit boxes [at] Capitol One Banks;" (2) the "search and seizure warrant of Plaintiff's company, Pamco Inc.;" (3) the "search warrant and seizure warrant of inventory of safe deposit boxes with signature[s] of witnesses of Capital One Bank staff;" (4) the "search and seizure warrant of [the] inventory of [the] company safe (Pamco Inc)"; (5) the "search and seizure warrant of [the] inventory of Plaintiff['s] storage unit at S. Dairy Ashford Street"; (6) the "search and seizure warrant of [the] inventory of Plaintiff[s] residen[ce];" (7) the "search and seizure warrant of inventory of Plaintiff['s] vehicles (3 trucks) at Plaintiff['s] residence" and (8) "Plaintiff['s] American and Forei[g]n currency ver[ification] sheet." Dkt. 63 at 1–4. According to Plaintiff, the Postal Service "intentionally did not mention" these documents "in [its] *Vaughn* index." *Id.* at 1; *see also* Dkt. 31-3 at 7 (*Vaughn* index).

There are several problems with Plaintiff's argument. First, the Postal Service has already explained that it has no such records. In his first FOIA request in 2016, Plaintiff sought:

> "arrest warrants, search warrants, wants [sic], warrants and detainers; all data reports, investigative reports, scientific lab reports, and all exploratory records and reports; factual proof of authorized jurisdiction ceded to the Federal Administrative U.S. Attorney's Office from the Governor to the United States as required by law;" including a copy of search warrant/seized warrant for "search warrant for safe deposit box under [his] name, [his] company name, and [his] wife's name on Capital One Bank, and list of seizure property from Bank, office and home; search warrant for [his] offices, [his] home and [his] three cars during investigation by Postal Inspector on September 2010; a copy of search and seizure warrant with attachment for seizure no. 109-10-40, 109-10-41, 109-10-42 and copy of list of property which seizure from safe deposit box at Capital One Bank on September 2010."

Dkt. 16-3 at 3–4 (Mungin Decl. ¶ 6) (quoting Plaintiff's FOIA request). As explained above, the Postal Service searched its computer database and located 61 pages of responsive records, released 37 pages (either in full or with redactions), and withheld the remainder or referred them

10

to agencies for review.[5]  The Postal Service also determined that "all hard copy documents and evidence were destroyed when [Plaintiff] exhausted [the] appeals" of his conviction.  Dkt. 16-3 at 4 (Mungin Decl. ¶ 7).  Thus, "[t]he only documents that remain[ed]" in existence were those "attached to the case file in [the computer database] when the case was active."  *Id.* (Mungin Decl. ¶ 8).  Unsatisfied, Plaintiff submitted a second FOIA request in 2017, seeking "a copy of the search and seizure warrant for safe deposit box number 241 located at Capital One Bank; search warrant for his office, home, and his three cars."  *Id.* at 5 (Mungin Decl. ¶ 9).  In response, the Postal Service did not conduct an additional search, and it advised Plaintiff that "he [had been] provided with all remaining responsive material in existence which relate to the subject of his request."  *Id.* at 5 (Mungin Decl. ¶ 9).

Second, the Court has already held that "the Postal Service conducted adequate searches for the records Plaintiff sought" through both FOIA requests.  Dkt. 22 at 9.  Thus, to the extent Plaintiff now suggests in his opposition brief that the Postal Service "did not conduct[] [an] adequate . . . search for all records Plaintiff sought," Dkt. 95 at 14, that argument is foreclosed by the law of the case.

Finally, despite Plaintiff's claims to the contrary, there is no evidence that the Postal Service failed to include any documents in its *Vaughn* index.  The Court has no reason to question the Postal Service's representations, made under the penalty of perjury, that the 61 pages of records listed in the *Vaughn* index are the only "responsive material in existence."  Dkt.

---

[5] The Postal Service referred six pages of responsive records to the Department of Justice Executive Office of the United States; those pages were later released by that office to Plaintiff in full.  *See* Dkt. 31-3 at 9.  The Postal Service referred one page to the U.S. Office of Immigration and Customs Enforcement ("ICE"), which determined that it should be released in part and withheld in part pursuant to the Privacy Act, 5 U.S.C. § 552a and FOIA Exemptions 6, 7(C), and 7(E).  *Id.* at 11–13.  Plaintiff does not maintain that he pursued an administrative appeal of ICE's decision or that any dispute regarding that page is properly before the Court.

16-3 at 5 (Mungin Decl. ¶ 9).  The *Vaughn* index describes each document that the Postal Service located in response to Plaintiff's FOIA requests and provides information regarding the "type of document," the "review status" and "redaction codes" for each document, "comments," and the "page [number]" that corresponds with each document.  Dkt. 31-3 at 7.  All 61 pages are accounted for in the *Vaughn* index, with the last document listed—the 17-page Operation Plan—comprising pages "45–61."  *Id*.  The Court thus concludes that no responsive records in existence were omitted from the *Vaughn* index.

The Court will, accordingly, deny Plaintiff's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Postal Service's motion for summary judgment, Dkt. 78, is hereby **DENIED** with respect to Exemption 7(C), and **GRANTED** in all other respects.  Plaintiff's motion for summary judgment, Dkt. 63, is hereby **DENIED**.  The Postal Service is **ORDERED** to file a status report on or before March 28, 2022, addressing (1) whether the eight-page Affidavit in Support of an Arrest Warrant described in the Vaughn *index* is the same document as the first entry on Plaintiff's criminal docket, *see* Complaint at 2–9, *United States v. Pejouhesh*, No. 4:10-cr-687 (S.D. Tex. filed Sept. 24, 2010), ECF No. 1; and (2) if so, whether the document must now be released pursuant to the public domain doctrine.

**SO ORDERED**.

/s/ Randolph D. Moss  
RANDOLPH D. MOSS  
United States District Judge

Date:  March 14, 2022